Glendale O. and Geraldine M. Scott v. Commissioner.
Scott v. Commissioner
Docket No. 4985-65.
United States Tax Court
T.C. Memo 1968-172; 1968 Tax Ct. Memo LEXIS 127; 27 T.C.M. (CCH) 835; T.C.M. (RIA) 68172; August 6, 1968. Filed Glendale O. Scott, pro se, Hunters Point *129 Pike, Lebanon, Tenn. Francis J. Cantrel, for the respondent. KERN Memorandum Findings of Fact and Opinion The respondent determined that petitioners are liable for income tax deficiencies and additions to tax in the following amounts in the following taxable years: Year Ended
Deficiency
Section 6651(a) Penalty
June 30, 1958
$ 476.90
$ 1.79
June 30, 1959
529.17
June 30, 1960
212.00
June 30, 1961
612.66
153.17
June 30, 1962
677.95
169.49
June 30, 1963 476.61
9.48
Total
$ 2,985.29
$ 333.93
Concessions have been made by both sides. The issues remaining for our decision are: 1. Whether depreciation and expense deductions claimed by petitioners relating to a house in Lebanon, Tennessee, claimed to have been used in petitioner Glendale O. Scott's law practice are allowable. 2. Whether certain depreciation and expense deductions claimed by petitioners relating to Lima, Ohio, property claimed to have been held for sale or rent are allowable. 3. Whether petitioners are entitled to a deduction in the taxable year ended June 30, 1962, for all or any part of a $10,000 loss claimed to have been sustained on the sale of the Lima, *130 Ohio, property through foreclosure proceedings. 4. Whether in his determination of deficiencies the respondent failed to give proper credit for amounts withheld by employers of petitioners for federal income taxes for the years ended June 30, 1958, 1959, 1960 and 1963. 5. Whether petitioners are liable for the additions to tax as determined by the respondent pursuant to section 6651(a), I.R.C. 1954, for failure to timely file income tax returns for the taxable years ended June 30, 1958, 1961, 1962 and 1963. Findings of Fact Some of the facts have been stipulated and are fund accordingly. The petitioners, Glendale O. Scott, hereinafter sometimes referred to as Glendale, and his wife, Jewell Geraldine Mitchell Scott, hereinafter sometimes referred to as Geraldine, claimed that their legal residence during the taxable years was in Tennessee, and filed joint federal income tax returns for each of the years herein involved with the district director of internal revenue at Nashville, Tennessee. These returns were prepared on a fiscal year basis and cover the fiscal years ended June 30, 1958, through June 30, 1963, inclusive. The returns for the years ended *131 June 30, 1958, and June 30, 1961, were filed with the district director on June 25, 1962. The returns for the years ended June 30, 1962, and June 30, 1963, were filed with the district director on July 6, 1964. None of these returns was timely filed. The following amounts were withheld for the payment of federal income taxes from the wages of petitioners by their employers, as reported on petitioners' tax returns, in the following fiscal years: Year ended June 30
Amount
1958
$ 663.72
1959
961.62
1960
433.27
1961
1962
1963
803.68
Lebanon, Tennessee, Property The parties have stipulated the following facts regarding the acquisition of this property: 15.(A) By deed dated December 23, 1944, G.O. Woolard and Estelle Exum Woolard, for and in consideration of $200.00 cash in hand paid, conveyed and transferred to petitioner, Glendale O. Scott, a certain tract of land comprising by estimation 8 1/4 acress located in the 5th Civil District of Wilson County, Tennessee. (B) By deed dated June 20, 1945, G.O. Woolard and Estelle Exum Woolard, for and in consideration of one dollar and other and valuable considerations, transferred and conveyed to petitioner *132 Glendale O. Scott and Douglas T. Scott, a certain tract of land containing an estimated 8 to 10 acres of land situated in the 5th Civil District of Wilson County, Tennessee. 837 (C) By deed dated April 5, 1946, G.O. Woolard and Goldie Estelle Woolard, for and in consideration of one dollar and other considerations, transferred and conveyed to Douglas T. Scott and petitioners, Glendale O. Scott and Jewell Geraldine Mitchell Scott a certain tract of land comprising approximately seven acres located in the 5th Civil District of Wilson County, Tennessee. (D) By deed dated December 3, 1951, Douglas T. Scott and petitioners Glendale O. Scott and Jewell Geraldine Mitchell Scott, for and in consideration of $1.00 and other considerations, transferred and conveyed all of the aforesaid tracts of land described in subparagraphs A, B, and C, above, to Vertrees Eskew. (E) By deed dated December 3, 1951, Vertrees Eskew, for and in consideration of $1.00 and further consideration, transferred and conveyed all of the property described in the immediately preceding subparagraph D, above, to petitioners Glendale O. Scott and Jewell Geraldine Scott for life with remainder to Douglas T. Scott. *133 (F) By Right of Way Deed dated June 2, 1952, Douglas T. Scott and petitioners Glendale O. Scott and Mrs. Jewell Geraldine Mitchell Scott, for and in consideration of $112.00, transferred and conveyed to the State of Tennessee approximately one half of an acre of the property in subparagraph E, above. In 1946, petitioners started clearing this property, located about 3 miles outside of Lebanon, which was then wooded and unimproved, and in 1946 or 1947 began construction thereon of a five-room house. Shortly after the construction of the house petitioners moved in and continued to live on the Lebanon property until 1954. Glendale practiced law in Lebanon, Tennessee, from 1942 until 1955. In the spring of 1955 Glendale moved his files, records and law library from his office located on the public square in Lebanon to petitioner's home, which we have referred to as the Lebanon property. Shortly thereafter, also in the spring of 1955, petitioners left Lebanon and moved to Flora, Indiana, where Glendale was employed as a school administrator while Geraldine cared for Glendale's aged mother, Elizabeth, and an aunt of Glendale. In 1956 petitioners moved to Washington, Indiana, with the *134 two elderly women, where Glendale was employed as the chief administrator of a rural school in Davis County, near Washington. In 1956 Glendale moved to Rensselaer, Indiana, teaching there for the school year 1956-1957. The record does not disclose whether Geraldine or Glendale's mother or aunt accompanied him to Rensselaer. In 1958 Glendale's mother appears to have been living in Toledo, Ohio. Petitioners lived in Adrian, Michigan, from September, 1957 through August, 1959, where Glendale was employed as an associate professor at Adrian College. From August, 1959, until June, 1960, petitioners lived in the Washington, D.C. area, during which period Glendale worked at two private elementary schools in Silver Spring, Maryland, in addition to providing consulting services in finance, management, personnel and tax matters under the style of Scott and Associates of the District of Columbia, Ltd. Glendale, with the assistance of Geraldine, continued to operate as Scott and Associates until September of 1962. At that time Glendale accepted a one-year assignment as assistant professor at Aroostook *State Teachers College in Presque Isle, Maine, while Geraldine remained in Washington. Glendale *135 rejoined Geraldine in Washington in June of 1963. They continued to reside in the Washington area and operate Scott and Associates up until the hearing of this case. Petitioners have claimed Lebanon, Tennessee, as their "legal" residence since leaving Lebanon in 1954 and have so indicated on their federal income tax returns for all of the years which are before us. Petitioners were registered to vote and did so in the Fifth Civil District of Wilson County, Tennessee, which included Lebanon, from 1954 through 1964 in city, county and state elections. As of September 6, 1966, Glendale was not registered to vote in the Fifth Civil District of Wilson County. Petitioners have not lived on the Lebanon property since 1955. In the spring of 1955 petitioners listed the property for sale at $12,500 and received an offer of $10,500, which they rejected. The house was destroyed by fire in 1966. Glendale earned no income as a lawyer or in any other capacity in Lebanon in any of the years before this Court. Petitioners claimed a deduction of $833.33 for depreciation relating to the Lebanon property in each *136 of the years ended June 30, 1958, through June 30, 1963. This amount represented an annual depreciation deduction of $500 on the house based upon a claimed $10,000 basis and 20-year life and an annual depreciation on furniture, fixtures 838 and law library of $333.33 based upon a claimed $5,000 basis and a 15-year life. In addition petitioners claimed a deduction for the year ended June 30, 1959, in the amount of $175 for unspecified "other business expenses." In this return petitioners explain this deduction as follows: Your taxpayer due to invalid mother and aunt both over 70 years of age in 1954 had to give up temporary [sic] his practice of law in Tennessee and go into educational work and taxpayers converted their home into an office in order to preserve the local files, records and furniture and library so that he can re-engage in the practice of law after death of mother and aunt. This deduction was disallowed because of petitioners' alleged failure to show its deductibility "under section 162 or any other section of the Internal Revenue Code." In their petition petitioners allege that they are entitled to this deduction as an expense incident to the preservation, *137 conservation and maintenance of business property located at * * * Lebanon, Tennessee." No testimony was adduced by petitioners in connection with this item. Lima, Ohio, Property The property involved in this issue, sometimes referred to herein as the Lima property, consisted of a lot located at 1007 East Elm Street, Lima, Ohio, and a two story, eleven-room house thereon. The Lima property had been the home of Elizabeth Scott, mother of Glendale, hereinafter sometimes referred to as Elizabeth, for many years prior to 1955 and had been the house in which Glendale had lived as a boy. In 1954 and for some time prior thereto Elizabeth and a sister, Estella A. Thomas, of age 70 and 68 respectively, were living in the Lima house with Elizabeth's son, Douglas T. Scott. In May of that year Douglas married and left the house. As Elizabeth and Estella were unable to manage on their own on account of their advanced age, Glendale and Geraldine, having left Lebanon, Tennessee, in the spring of 1955, took them to Flora, Indiana, in that year to live with the petitioners and be cared for by Geraldine. By a duly recorded warranty deed dated June 27, 1956, Elizabeth Scott conveyed the Lima *138 property to petitioners for a total consideration of $2,112.66 consisting of a stated consideration of $10 recited in the deed, the assumption by petitioners of a $2,000 mortgage payable to the Metropolitan Bank of Lima, Ohio, plus accrued interest thereon, and the payment of the taxes due thereon to Allen County, Ohio, for the first half of 1956. The total amount of the encumbrance assumed by the petitioners pursuant to this agreement, including interest due, was $2,070.33, which was paid on July 19, 1956. The taxes referred to amounted to $32.33 and were also paid on July 19, 1956. These two payments totaling $2,102.66 were made on behalf of petitioners by First Federal Savings and Loan Association of Lima, Ohio, in connection with the following transaction: Petitioners borrowed the sum of $5,000 from the First Federal Savings and Loan Association of Lima, Ohio, hereinafter sometimes referred to as the Association, in consideration of a first mortgage given by them dated July 12, 1956. The purpose of the loan as stated on the loan application submitted by petitioners on July 5, 1956, was "complete remodeling of home." The procedure of the Association in administering the $ 5,000 *139 loan was to make payments directly to payees designated by the petitioners. The records of the Association show that the following payments were made by the Association to the following named payees on the dates indicated out of the proceeds of the $5,000 loan: Date
Purpose
Payment
7/13/56
H. Ev. Atty
$ 17,00
7/13/56
Int. to 7/31
15.31
7/19/56
to Scott
250.00
7/19/56
Metro. Bank
2,070.33
7/19/56
June Tax
32.33
7/20/56
Harold Crum * 150.00
7/20/56
Bill Cook * 20.00
7/20/56
Surplus Store * 45.56
7/20/56
Surplus Store * 45.56
7/24/56
Home Outfitters * 116.99
7/25/56
Harold Crum * 75.00
7/30/56
K. F. Woodall * 146.30
7/30/56
Eugene Baker * 186.78
7/30/56
Eugene Baker * 14.50
8/ 2/56
Harold Crum * 75.00
8/ 2/56
Scott - Laborers ** 48.85
8/ 3/56
Windows - Scott * 150.00
8/ 3/56
Fentress L. Neider * 25.00
8/ 3/56
C.F. Williams * 159.25
8/ 6/56
Jim Webb * 50.00
8/ 8/56
Bill Cook * 125.00
8/ 8/56
Harold Hirt * 45.90
8/ 9/56
Chas. Ash * 20.00
8/13/56
Sam Hill * 16.29
8/13/56
Dillard Rogers * 41.75
8/13/56
Raymond Metcalf * 30.54
8/13/56
Groves Brown * 6.29
8/15/56
Fidelity Coal * 7.99
8/16/56
Nat. Lime & Stone * 14.62
8/17/56
Joe Robinson * 28.75
8/17/56
Otis T. Lippencott
50.00
8/20/56
Millard Rogers * 25.75
8/20/56
Walter Boop * 5.00
8/21/56
Raymond Metcalf * 19.29
8/27/56
Roy Mason * 12.90
8/28/56
W. M. Webb * 12.86 8/31/56
To Apply to Loan
50.00
9/ 1/56
Glendale O. Scott
150.28
9/12/56
Charles Shepard * 100.00
9/14/56
Allen County Concrete * 28.84
9/15/56
Nathaniel Minor * 5.50
9/17/56
Chas. & Leonard Shepard * 26.00
1/31/57
Folsom Insurance Agency
57.20
2/ 1/57
Bill Cook
33.37
3/ 7/57
Materials and Supplies * 67.87
3/11/57
Bill Cook * 19.50
3/11/57
R. F. Johnston * 8.34
8/30/57
To Apply to Loan #8928
174.74
8/22/60
Folsom Insurance Agency
10.50
4/18/61
To Apply to Loan #8928 111.17
Total payments
$5,000.00
*140 839
Of these sums, those items marked with an asterisk represent amounts shown by petitioners or conceded by the respondent to represent capital improvements to the Lima property, totaling $2,011.14. Petitioners borrowed $3,500 from Elizabeth on June 13, 1958, giving a second mortgage on the Lima, Ohio, property. This mortgage was released and satisfied of record in January of 1961. Upon petitioners' default in payment of the $5,000 loan, the Association instituted foreclosure proceedings on September 19, 1959, in the Court of Common Pleas of Allen County, Ohio. As a result of these proceedings the property was sold to Ohio Realty Exchange, Inc., of Lima, Ohio, on December 30, 1960 for $4,800. The proceeds of the sale were distributed as follows: Treasurer, Allen County, Ohio
$ 339.38 for property taxes,
penalties and interest
Cost of Suit
154.80
Revenue Stamps
5.50
Association 4,300.32
$ 4,800.00
Final payment on the remaining balance of the $5,000 loan to the Association of $4,411.49 was made on April 18, 1961, which payment included the $4,300.32 distribution to the Association resulting from the foreclosure proceedings. At the time *141 of the conveyance of the Lima house to petitioners in June of 1956 it was petitioners' intent to convert the house into two apartments, one on the first floor and one on the second, and either rent the apartments or sell the entire property. Work stopped on the remodeling work in early 1957. In deference to Elizabeth's objections petitioners did not attempt to rent the property but placed it for sale in the hands of a real estate agent. It was not sold until the judicial sale incident to the foreclosure proceedings instituted in 1959. The Lima house was not lived in by anyone from the time Elizabeth and Estella left it in 1955 until after the foreclosure, and it was never intended by petitioners that they or Elizabeth would return to occupy the house. For the taxable years ended June 30, 1958, 1959 and 1960, petitioners claimed as deductions expenses related to the Lima property totaling $372.10, $397.84 and $15 respectively. The record herein indicates and respondent concedes that petitioners incurred expenses of $415.75, $411.08 and $89.45 in those respective years on account of the Lima property. Petitioners claimed a deduction for depreciation in connection with the Lima, *142 Ohio, property of $1,500 for each of the taxable years ended June 30, 1958 through 1961. These deductions were based upon Glendale's opinion that the property was worth $15,000 at the time of its acquisition in 1956 and that its useful life was ten years. Petitioners claimed a deduction of $10,000 as a loss sustained by them in the taxable year ended June 30, 1962, in connection with the Lima property. In his notice of deficiency the respondent determined that no deductions for expenses or depreciation related to the Lima property were allowable in any of the taxable years herein involved and further that no part of the $10,000 loss claimed by the petitioners in the taxable year ended June 30, 1962, with respect to the Lima property was allowable. Petitioners purchased the Lima property in 1956 primarily for profit and held it in the years in question "for the production of income" within the meaning of sections 165 (c)(2), 167(a)(2) and 212(2), I.R.C. 1954. The correct amount of the depreciation allowable with respect to the Lima house for each of the taxable years ended June 30, 1958, through June 30, 1961, is *143 $262.19 computed as follows: Original cost of Lima property
$2,112.66
7/8 of $2,112.66 allocable to building
[1] 1,848.58
Improvements to building 2,011.14
Total cost of building
$3,859.72
Less depreciation taken and allowed for year ended 1,500.00
June 30, 1957
Depreciable basis as of July 1, 1957
$2,359.72
Annual depreciation - 9 yr. straight 840 Petitioners realized a gain on the disposition of the Lima property in the amount of $2,725.28, computed as follows: Net proceeds of foreclosure $4,300.32
sale
Original cost
$2,112.66
Improvements 2,011.14
Total
$4,123.80
Less:
Depreciation allowed for $1,500.00
year ended June 30, 1957
Depreciation allowable for 1,048.76
years ended June 30, 1958 through June 30, 1961 at $ 262.19 per year
Total 2,548.76
Adjusted basis
$1,575.04 1,575.04
Gain
$2,725.28
*144 This gain was realized by petitioners in connection with the foreclosure sale of the Lima property in the taxable year ended June 30, 1961. Opinion KERN, Judge: The issues herein relate to various deductions claimed by petitioners relative to property in Lima, Ohio, and Lebanon, Tennessee, the effect upon the deficiencies determined by the respondent of amounts withheld by employers of petitioners for the payment of federal income taxes, and penalties for failure to timely file returns in certain of the tax years before us. Petitioners claimed a deduction of $175 for the taxable year ended June 30, 1959, which was characterized in various ways by petitioners in their return, in their petition, and their brief. [2] No evidence with regard to this item was introduced at the trial. Petitioners have failed to show that respondent erred in disallowing this deduction. The Lebanon property in which petitioners owned only a life interest served *145 as their residence in 1954 and for some years prior thereto. Glendale was practicing law in Lebanon at that time and had done so since 1942. During these years Glendale maintained a law office located on the public square in Lebanon. In 1955 Glendale moved his files, records and law library from his office to his home, listed the home for sale and moved with Geraldine to Flora, Indiana, where he took a position as a school administrator. The Lebanon property was never sold, and was destroyed by fire in 1966. Between 1955 and the time of the hearing of this case Glendale has been employed in various capacities for various periods of time in Indiana, Michigan, Maryland, Maine, and Washington, D.C., as set out in our findings of fact. Petitioners claimed on each of their returns for the taxable years a deduction of $500 for depreciation on a "5-Room House" located on the outskirts of Lebanon, Tennessee which is shown on their returns as having a "cost or other basis" of $10,000, and a deduction of $333.33 for depreciation on furniture, fixtures and a library which are shown on their returns as having a "cost or other basis" of $5,000. Petitioners contend that these deductions relate *146 to Glendale's business as a lawyer and tax consultant carried on in Lebanon which he gave up prior to the taxable years but to which he intimates an intention to return at some indefinite future time. Petitioner Glendale testified that he felt obligated to retain his files and argues that it was appropriate to store them, together with his law library and his office furniture, in the Lebanon house which thereby became an office and property held for the production of income. He also suggests a somewhat inconsistent argument to the effect that depreciation on the house was allowable since it was being held for sale. Since the record contains no evidence showing the "cost or other basis" to petitioners of the furniture, fixtures and law library here in question they have failed to prove that respondent erred in disallowing the deductions claimed on account of the depreciation thereon. 841 We are also of the opinion that the petitioners have failed to prove their "cost or other basis" with regard to the "5-Room House" near Lebanon upon which they have deducted depreciation. While there is vague testimony in the record to the effect that Glendale's brother (who owned the remainder *147 interest in the property) and his mother sent to petitioners unspecified sums of money from which they paid unspecified building expenses and testimony to the effect that at some unspecified time "Douglas T. Scott [Glendale's brother and the remainderman to the property], Glendale O. Scott and Geraldine M. Scott borrowed $1,000 from Commerce Union Bank * * * to be used to go into this building," there is no evidence as to any specific sums of money paid by petitioners for or on account of this property out of their own funds. Even if petitioners had proved a basis with regard to the Lebanon house or the library or fixtures therein we would be of the opinion that they were not entitled to take deductions on account of depreciation thereon during the taxable years. We think that Glendale abandoned whatever law practice he had in 1955 in Lebanon when he and Geraldine left for Indiana. No income was received by Glendale from his law practice in Lebanon in any of the years before the Court and petitioners do not contend otherwise. Furthermore, petitioners' contention that Glendale intended to return to his law practice in Lebanon is unconvincing in light of the fact that he has been *148 absent from Tennessee for some 13 years. Even if we could find that petitioners intended to return to Lebanon at some future time to live, no evidence has been presented herein showing that there was any law practice in Lebanon to which Glendale could return. Petitioners advanced the contention on brief that Glendale was obliged to preserve his law files and records for "ethical, moral, legal and professional" reasons. Petitioners offered no evidence as to the nature of these files and records and have not shown why any such obligation could not be satisfied by turning over such files and records to Glendale's former clients or to their representatives. Petitioner Geraldine testified that when petitioners left Lebanon they offered the Lebanon property for sale through one Dilly McNab who obtained one offer to purchase which was refused. The record does not show whether petitioners' life interest was offered for sale or whether the offer to purchase related to such life interest. In our opinion the record herein does not warrant a finding that petitioner's proprietary interest in the Lebanon property was held for sale during the taxable years, especially in view of Glendale's insistence *149 that the Lebanon house was retained for the purpose of stowing his files. Nor does the record warrant a conclusion that the property had lost its character as residential property and had become property held for the production of income. See Warren Leslie, Sr., 6 T.C. 488, 493. In their tax returns for each of the years ended June 30, 1958, through June 30, 1961, petitioners claimed a deduction for depreciation on account of the Lima property in the amount of $1,500. They claimed as deductions certain maintenance expenses relating to the Lima property for each of the taxable years ended June 30, 1958, through June 30, 1960. In addition, petitioners claimed as a deduction for the taxable year ended June 30, 1962, $10,000 on account of an alleged loss incurred by them as a result of the foreclosure sale of the Lima property. It is the contention of the respondent that the Lima property was not held by the petitioners for the production of income during the taxable years ended June 30, 1958, through June 30, 1961, and that no deductions on account of expenses or depreciation related to the property are allowable. Respondent determined in his notice of deficiency that *150 the petitioners were not entitled to the claimed $10,000 deduction on account of the alleged loss relating to the Lima property. On brief the respondent further contends that petitioners had a long term capital gain on the disposition of the Lima property instead of a loss. However, he has made no claim for an increased deficiency on this account. We have found in our findings of fact that petitioners held the Lima property for the production of income. We have determined in our findings the correct amounts of the expenses and depreciation allowable relating to the Lima property. In addition, we have concluded that petitioners did not sustain a loss on the disposition of the Lima property. In making these determinations and reaching these conclusions we have considered the questions against the following factual background: Prior to 1955 Glendale's mother, Elizabeth, had been living in the Lima house with her sister, Estella A. Thomas, and a son, Douglas T. Scott, who cared for the two. Both women were 842 about 70 years old in 1954. In May of 1954 Douglas married and moved out of the house. At that time petitioners herein were in the process of moving from Lebanon, Tennessee, *151 to Flora, Indiana, where Glendale was employed as a school administrator. It was petitioners' belief that because of their advanced age Elizabeth and Estella would be unable to continue living in the house unattended, and petitioners therefore removed both women to Flora in 1955, where they lived with petitioners and were cared for by Geraldine. After Elizabeth and Estella vacated the Lima house in 1955 it remained unoccupied until after the foreclosure sale in December of 1960. Petitioners purchased the Lima house from Elizabeth on June 27, 1956, for a total consideration of $2,112.66, consisting of the assumption of a $2,070.33 mortgage obligation, the payment of the property taxes owed by Elizabeth with respect to the Lima property of $32.33, and a cash payment of $10. Elizabeth never intended to and did not return to the Lima house. Petitioners never intended to and did not at any time live in the house. Immediately after purchasing this house petitioners began renovating and remodeling it and arranged for the payments for this work to be made out of part of the proceeds of a $5,000 loan secured by the property which was procured for that purpose, and also to provide funds *152 for the payment of the $2,070.33 mortgage indebtedness assumed by them in connection with their purchase of the property. By June 30, 1957, petitioners had expended a total amount of $2,011.14, as we have found in our findings of fact, to so renovate the property. In addition, petitioners expended $415.75, $411.08, and $89.45 in the taxable years ended June 30, 1958, through June 30, 1960, respectively on account of expenses relating to the Lima property. As a result of petitioners' default on the $5,000 obligation, foreclosure proceedings were instituted with respect to the Lima property and it was sold pursuant thereto on December 30, 1960, for $4,800. The respondent relies heavily on the fact that petitioners received no receipts with respect to the Lima property, either in the form of rent or the proceeds of a sale, in any of the years for which deductions for expenses and depreciation were claimed. Respondent further argues that petitioners could not have rented the property during the years in question because the house contained furniture belonging to Elizabeth and she did not want the property rented. The testimony of petitioners was to the effect that they originally intended *153 to remodel the house and rent it, furnished with furniture and furnishings owned by Elizabeth, as two apartments, but that shortly after their purchase of the house they decided, on account of the wishes of Elizabeth, to sell the house, and they proceeded to list it for sale. In spite of the rather vague testimony of petitioners with regard to their attempts to sell the Lima property we have concluded that they did make listings of it for sale and did have a bona fide intent to sell it after they decided not to rent it. Accordingly, we have concluded that during the taxable years ended June 30, 1958, through June 30, 1961, the Lima property was "held for the production of income" within the meaning of section 167(a)(2) and 212(2), and 165(c)(2), I.R.C. 1954. See George W. Mitchell, 47 T.C. 120, 128; Commissioner v. Smith, 397 F. 2d 804 (C.A. 9, July 5, 1968), [3]Mary Laughlin Robinson, 2 T.C. 305. In this connection we point out that petitioners never resided and, as far as the evidence indicates, never intended to reside in the Lima property after their purchase of it, and, furthermore, *154 that Elizabeth ceased to reside in the house after its sale, never returned to it and never intended to do so. [4]
It is clear from the record that for the purpose of calculating the depreciation with respect to the Lima property and the gain or loss on its disposition petitioners erroneously assigned as the basis of the property their opinion of its value (which they believed to be $15,000) rather than its cost. See sections 1011 and 1012, I.R.C. 1954. The correct amount of the depreciation allowable in each of the taxable years ended June 30, 1958, through June 30, 1961, is $262.19, as set out in our findings of fact. As we have stated, petitioners had a gain on the foreclosure sale in the taxable year ended June 30, 1961, as reflected in our findings of fact, rather than a loss in the taxable year ended June 30, 1961, as claimed 843 by petitioners. However, the only adjustment made by the respondent *155 in his notice of deficiency with respect to the foreclosure sale of the Lima property was to disallow the $10,000 loss claimed. The respondent's notice of deficiency reflected no adjustment on account of any gain realized on the disposition of the Lima property, nor was any assertion of a greater deficiency made by the respondent in his answer, in any other pleading or even orally at the trial herein. This Court does not have jurisdiction to determine a greater deficiency than that for which a claim is asserted by the respondent. Section 6214, I.R.C. 1954. In their petition petitioners allege that the respondent has failed to give proper "credit" for taxes withheld by the various employers of each of the petitioners in some of the years in question. We have found in our findings of fact that the amounts claimed as withheld on petitioners' tax returns were actually withheld, and respondent has not contended otherwise. If we understand the thrust of petitioners' argument on this issue, they have misconstrued the concept of a "deficiency" in tax as defined by section 6211, I.R.C. 1954. [5]
*156 That section explicitly states that the deficiency determined by the Commissioner is the excess of the tax imposed over the amount shown as the tax by the taxpayer on his return, without regard to the credit for taxes withheld under section 31, I.R.C. 1954. Paul Irvin Redcay, 12 T.C. 806. Therefore, the amounts withheld are irrelevant to our decision with regard to the deficiencies determined by the Commissioner in the tax years before us. The last issue for our consideration is whether the respondent erred in imposing the 5% penalty pursuant to section 6651(a) for failure to timely file returns for the taxable years ended June 30, 1958; June 30, 1961; June 30, 1962; and June 30, 1963. Each of the above returns was filed after the prescribed date for filing, as indicated in our findings of fact. Since petitioners have offered no evidence or made no contention that the late filing in any of the years was due to reasonable cause, we decide this issue for the respondent. William M. Bebb, 36 T.C. 170. In order to reflect the conclusions reached herein, Decision will be entered under Rule 50. Footnotes
*. Erroneously referred to in the supplemental stipulation as "Aroostock."↩
1. The only evidence relating to the respective values of the land and house at the time of purchase was an appraisal made in connection with the $ 5,000 loan to petitioners secured by the Lima property valuing the land and house at $ 1,000 and $ 7,000 respectively.↩
2. On brief they contend that this $175 represented the cost of a trip to Washington by Glendale in connection with his "law and tax consultant office located * * * Lebanon, Tennessee" to become admitted to the bar of the Supreme Court.↩
3. Affirming Hulet P. Smith, a Memorandum Opinion of this Court, filed Feb. 15, 1967 26 T.C.M. 149↩). 4. Cf. Theodore B. Jefferson, a Memorandum Opinion of this Court, filed July 18, 1967 26 T.C.M. 709↩).
5. SEC. 6211. DEFINITION OF A DEFICIENCY. (a) In General. - For purposes of this title in the case of income, estate, and gift taxes, imposed by subtitles A and B, the term "deficiency" means the amount by which the tax imposed by subtitles A and B exceeds the excess of - (1) the sum of (A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus (B) the amounts previously assessed (or collected without assessment) as a deficiency, over - (2) the amount of rebates, as defined in subsection (b)(2), made. (b) Rules for Application of Subsection (a). - For purposes of this section - (1) The tax imposed by subtitle A and the tax shown on the return shall both be determined without regard to payments on account of estimated tax, without regard to the credit under section 31, and without regard to so much of the credit under section 32 as exceeds 2 percent of the interest on obligations described in section 1451↩.